R. L. JONES v. THE STATE.

No. 20787. Delivered February 21, 1940.

The opinion states the case.

*Sam H. Allred, Crawford C. Martin,* and *Vernon Allred,* all of Hillsboro, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is theft of turkeys; the punishment, confinement in the penitentiary for one year.

Vernon Stansberry lost four turkey hens and a gobbler. They were traced to the possession of appellant. A witness for the State testified that shortly after the alleged theft he bought four turkey hens and a gobbler from appellant. After an investigation of the alleged theft had been instituted appellant paid Mr. Stansberry for four turkey hens and a gobbler. There was proof on the part of the State to the effect that appellant had made the statement that he knew the turkeys belonged to Mr. Stansberry at the time he took them.

Appellant testified that his mother had some turkeys on his place. He said: "There was some turkeys that came there to our place last year, there was four hens and a gobbler. They had been coming there on our place something like a couple of months. They would come there and fight my mother's turkeys. They had been doing that for some time. I know what became of those turkeys, I sold them. I sold them in Rio Vista. When I caught the turkeys they were in my yard. * * * I took them away because they were molesting and bothering us. * * * I carried the turkeys to Rio Vista and sold them to Mr. Hall. I got $9.76 for them. I brought the money home and put it in the trunk. That was part of the same money that I paid to Mr. Stansberry." Appellant testified, further, "I didn't know whose turkeys they were. They didn't roost there, I wasn't out tracking them down to see where they did roose." We quote further from his testimony: "When I picked those turkeys up off of the yard and carried them to Rio Vista and sold them I didn't do it with intent to hurt or harm anybody. I didn't do it with any intention to sell the turkeys and use the money for my own benefit. I didn't try to harm or injure the turkeys while they were on my place there depredating on my prop-

erty because I didn't want to kill some man's turkeys, and I thought if I taken the turkeys and sold them and some one come along and proved up that the turkeys belonged to him, why I had the money there to pay for the turkeys, the $9.76 I received for the turkeys. It was never my purpose to pick those turkeys up and sell them and use the proceeds for my own use and benefit. I didn't want to do any man any injury by reason of taking the turkeys to Rio Vista and selling them."

Nowhere in the charge did the court submit an instruction covering appellant's affirmative defense. Appellant presented to the court two requested instructions, the substance of which was that if appellant, when he took the turkeys, had no fraudulent intent to deprive the owner of the value of such turkeys and to appropriate them to his own use and benefit he should be acquitted. These charges (Nos. 5 and 6) were refused. We think they should have been submitted to the jury, and that the refusal of the court to submit them constitutes reversible error. In Pyles v. State, 136 S. W. 464, it was shown that Pyles took some oats from the field of the injured party without his consent. Upon his trial for theft Pyles testified that when he took the oats he intended to pay for them. In holding that the testimony raised an affirmative defense which should have been submitted in the charge of the court, Judge Davidson, speaking for the court, used language as follows:

"The court instructed the jury that if appellant fraudulently took the oats, for the purpose of appropriating to his own use and benefit, the jury should convict him. Appellant requested three special instructions, the substance of which was that if appellant, when he took the oats, had no fraudulent intent, but took them with a view of paying for the same, and the jury so believed, he was entitled to an acquittal. These charges were refused. The case is submitted to this court on the theory that these charges should have been given. We are of opinion that his contention is correct. It is not all taking of property that is theft.

"The fraudulent intent must exist at the time of taking, and if this did not exist at that time, the taker would not be guilty of theft. Appellant, we think, had the legal right to have this phase of the testimony submitted to the jury under the instructions requested."

See also Taylor v. State, 233 S. W. 846.

We quote from Branch's Ann. P. C., Sec. 2457, as follows:

"If there is evidence that the property was taken without any fraudulent intent the court should charge the jury affirmatively upon this issue."

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.